IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DEAN C. BOYD                                                                                    PLAINTIFF

v.                                                                                    No. 4:21CV135-GHD-RP

DENISHA JENKINS, ET AL.                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Dean C. Boyd, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants denied him adequate medical care and used excessive force against him during his incarceration. The defendants have moved for summary judgment, arguing that the plaintiff failed to exhaust his administrative remedies before filing the instant suit. The plaintiff has responded to the motion; the defendants have replied, and the plaintiff has submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

(5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts

At the time the plaintiff filed this complaint, he was an inmate in the custody of the Mississippi Department of Corrections ("MDOC"). Doc. 1 at 2. At all times relevant to this suit, he was incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi ("MSP"). *Id.* The plaintiff alleges that from July 1, 2021, until October 2021, Officer Denisha Jenkins orally harassed and hurt him while he was a patient in the MSP medical ward. Doc. 1 at 5. He also alleged that Nurse Money knowingly provided him with the wrong medication. *Id.*

On August 9, 2021, Boyd submitted a grievance to the Administrative Remedy Program ("ARP") requesting that Officer Jenkins be moved and be made to explain why she was harassing and cursing him. *See* Exhibit "A" (Affidavit of Richard Pennington, Jr.) at MDOC-BOYD 135-002931.[1] In ARP[2] MSP-21-538 Boyd claimed that Jenkins harassed and cursed him and alleged that at one point she snatched the phone from him, injuring his shoulder. *Id.* at MDOC-BOYD 135-002934. The ARP program rejected the grievance via Form ARP-1 because the relief was beyond the power of the Administrative Program to grant. *Id.* at MDOC-BOYD 135-002932. Boyd received the rejection on August 19, 2021. *Id.* at MDOC-BOYD 135-002933. He resubmitted the grievance, which was backlogged with a tracking number "41." *Id.* at MDOC-BOYD 135-002936. In the resubmitted grievance, dated September 27, 2021, Boyd claimed that Jenkins harassed him and that she threw the

---

[1] The exhibits reference in the instant memorandum opinion may be found attached to the defendant's motion [25] for summary judgment.

[2] The court will use the terms "grievance" or "ARP" interchangeably.

- 3 -

papers on his bed. *Id.* The resubmitted grievance was accepted on October 6, 2021. *Id.* at MDOC-BOYD 135-002937. It was placed on backlog due to the many other grievances Boyd had previously filed. *Id.* at MDOC-BOYD 135-002935. Boyd filed yet another grievance on October 12, 2021, claiming that Jenkins harassed him. *Id.* at MDOC-BOYD 135-002940. These grievances were likewise backlogged. *Id.* at MDOC-BOYD 135-002941. Boyd moved forward and filed the instant suit on October 18, 2021, while the relevant grievances remained backlogged. *See generally* [CM/ECF Doc. 1]

Along with the original grievance and the resubmissions, around September 10, 2021, Boyd drafted a letter to Superintendent Timothy Morris. In the letter he complained about his medical care and alleged that Officer Jenkins harassed him. *See* Motion Exhibit "B" at MDOC-BOYD 135-000096. In response to Boyd's letter, Ms. Sonja Stanciel, Chief of Security, stated that he was receiving proper medical care in Unit 31 and that Officer Jenkins had denied the harassment allegations.[3] *Id.*

Similarly, on or around September 21, 2021, Boyd wrote a letter to Commissioner Burl Cain. In response to the letter, Ms. Sonja Stanciel again advised Boyd that he was seen daily by the medical staff in Unit 31. *Id.* at MDOC-BOYD 135-000097. In addition, Ms. Stanciel stated that she had spoken to Officer Jenkins, who denied harassing Boyd.[4] *Id.*

### The Defendants' Motion for Summary Judgment

The defendants argue in the instant motion that the plaintiff did not exhaust his administrative

---

[3] As discussed more fully below, such a letter does not constitute a proper grievance for the Administrative Remedy Program. *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006); *Zebrowski v. U.S. Fed. Bureau of Prisons*, 558 F. App'x 355, 360 (5th Cir. 2014)(letter sent to senator irrelevant to exhaustion issue).

[4] As stated earlier, such a letter does not constitute a valid ARP grievance.

remedies before filing the instant suit, as required under the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under [42 U.S.C.§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other prison until such administrative remedies as are available are exhausted.

*See* 42 U.S.C. § 1997e(a).

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress created the exhaustion requirement to weed out the frivolous claims from the colorable ones. *Id.* at 203. Thus, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983.

The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural

rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.* at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its prisons. Under this statutory authority, the Mississippi Department of Corrections created the Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the

grievance and determines whether to accept it into the ARP process. *Id.* The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances.

As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra.* Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf ("Inmate Handbook, Chapter VIII, Administrative Remedy Program") (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the inmate. *Howard, supra.* An inmate may only pursue one grievance at a time; additional requests "will be logged and set aside for handling at the Director's Discretion:

> If an inmate submits additional requests during the period of Step One review of his

request, *the first request will be accepted and handled.*[5] The others will be logged and set aside for handling at the Director's discretion. A maximum of ten requests will be logged. Requests above that number will be returned to the inmate and not filed.

Inmate Handbook, Chapter VIII, Administrative Remedy Program, VII(A).

If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate grievance form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id.* Issuance of the Second Step Response is the only way to complete the grievance process. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

The Inmate Handbook requires that a grievance "present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." *See Pinkton v. Jenkins*, 2019 WL 1089087, *3 (N.D. Miss. 2019). Although a plaintiff is "not required to present specific legal theories in his grievances, . . . he [is] required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "[T]his portion of [MDOC's] ARP requires that all officials involved be named or at least referenced in description." *Holton v. Hogan*, 2018 WL 707544, *3 (S.D. Miss. 2018); *see also Pinkton*, 2019 WL 1089087 at *3 (dismissing claims against two defendants for failure to exhaust administrative remedies where plaintiff never filed grievance regarding the actions of the two defendants).

## Discussion

---

[5] Hence, only the first grievance will be accepted; while it is pending, the subsequent ones will be backlogged. The grievance process will not begin for the second grievance until the first grievance has been resolved. Likewise, the process will not begin for the third grievance until the second has been resolved, and so on – until no more grievances are backlogged.

The plaintiff did not exhaust his administrative remedies regarding his claims against the defendants before filing suit. The court will discuss the exhaustion process for the initial grievance – and Boyd's multiple resubmissions – in turn.

**ARP MSP-21-538**

On August 9, 2021, Boyd submitted correspondence to the ARP department requesting that Officer Jenkins be moved and be made to explain why she was cursing at him. See Affidavit of Richard Pennington, Jr., attached to the defendants' motion for summary judgment as Exhibit "A," MDOC-BOYD 135-002931. In ARP MSP-21-538, Boyd claimed that Jenkins harassed and cursed him and at one point snatched the phone from him, injuring his shoulder. *Id.* at MDOC-BOYD 135-002934. The ARP program rejected the grievance via Form ARP-1 because the relief requested was beyond the power of the Administrative Program to grant. *Id.* at MDOC-BOYD 135-002932. Boyd received the rejected response on August 19, 2021. *Id.* at MDOC-BOYD 135-002933. He resubmitted the grievance, which was backlogged with a tracking number "41." *Id.* at MDOC-BOYD 135-002936. In the resubmitted grievance, dated September 27, 2021, he claimed that Jenkins harassed him and that she would throw his papers on his bed. *Id.* The resubmitted grievance was accepted on October 6, 2021. *Id.* at MDOC-BOYD 135-002937. As set forth above, it was placed on backlog due to the many other unresolved ARP grievances Boyd had previously filed. *Id.* at MDOC-BOYD 135-002935.

Boyd filed another grievance on October 12, 2021, again claiming harassment by Jenkins. *Id.* at MDOC-BOYD 135-002940. This grievance was also backlogged. *Id.* at MDOC-BOYD 135-002941. Though the grievance process was ongoing as to his claims, with multiple grievances backlogged, Boyd filed the instant suit on October 18, 2021. *See, generally* Doc. 1. Indeed, all of Boyd's grievances involving his allegations in the instant case were in backlog status at the time he

filed suit. Hence, as to the relevant grievances, Boyd did not wait for the backlogged ones to be accepted and processed to conclusion – and thus did not fully exhaust his administrative remedies prior to filing suit – as required by the PLRA.

**Boyd's Letters to Prison Officials**

In addition to his formal grievances, Boyd sent letters to Morris and Cain complaining about the defendants. However, letters and other informal complaints do not constitute proper exhaustion under the Prison Litigation Reform Act. *See Woodford, supra; Zebrowski, supra.* In addition, Boyd did not send these letters to the MDOC Claims Adjudicator, as required to initiate an MDOC grievance. *See Howard v. Epps, supra.* As Boyd's letters did not conform to the prison grievance process, he cannot rely upon them to exhaust his administrative remedies as to these claims.

**Boyd's Argument Regarding Exhaustion**

In response to the defendants' motion for summary judgment, Boyd argues that he has exhausted his administrative remedies as to the backlogged grievances. He relies on Paragraph VIII(A) of Section VIII of the Inmate Handbook (Administrative Remedies):

VIII. Deadline and Time Limits

Unless an extension has been granted, no more than 90 days shall elapse *from the beginning of the process* to ending the process. Absent such extension, expiration of the response time limits without receipt of a written response shall entitle the inmate to move to the next step in the process.

Inmate Handbook, Section VIII, Paragraph (VIII(A)) (emphasis added). Boyd did not receive a Second Step response for any of his grievances; as such, he did not complete the grievance process in that way. Hence, the only way he could have exhausted his administrative remedies is by continuing the grievance for 90 days – the maximum period for the process to be completed once it has begun.

Boyd argues that the 90-day period expired for his grievances that were placed on backlog – thus completing the grievance process. He argues that he submitted his initial grievance on August 9,

- 10 -

2021[6]; it was rejected[7], and he resubmitted it on September 27, 2021. It was marked as "Accepted" on October 6, 2021, and placed on backlog (with tracking #41) in accordance with the MDOC grievance procedure. *Id.* at MDOC-BOYD135-002935 – 135-002937. Another grievance, filed October 12, 2021, was similarly placed on backlog. The instant complaint was placed on the docket on October 18, 2021.

The 90-day clock begins ticking at "the beginning of the [grievance] process." Inmate Handbook, Section VIII, Paragraph (VIII(A)). The question then becomes: When does the MDOC grievance process begin for grievances that get backlogged? The MDOC Inmate Handbook contains the procedures for the Administrative Remedy Program in Chapter VIII. Section IV(H) of that chapter states:

> Once an inmate's request for remedy is *accepted into the procedure*, they must use the ARP envelope that is furnished with his/her Step One response to continue the procedure.

Inmate Handbook, Section VIII, Paragraph (IV(A)) (emphasis added). Thus, for the first (non-backlogged) grievance, the process begins when the "Accepted" box is checked on the grievance screening form.

Section VII(A) of the Administrative Remedy Program procedures discusses backlogging of second and subsequent requests filed while the first one is pending:

> If an inmate submits additional requests during the period of Step One review of his request, *the first request will be accepted and handled.* The others will be logged and set aside for handling at the Director's discretion. A maximum of ten requests will be logged. Requests above that number will be returned to the inmate and not filed.

---

[6] See Affidavit of Richard Pennington, Jr., Exhibit "A" at MDOC-BOYD 135-002931.
[7] *Id.* at MDOC-BOYD 135-002932.

- 11 -

Inmate Handbook, Chapter VIII, Administrative Remedy Program, VII(A). "Logged and set aside" fits the very definition of "backlog": "to hold in reserve, as for future handling ...." *See www.dictionary.com/browse/backlog* (last visited January 9, 2023).

Thus, when second and subsequent grievances are submitted before the first one is resolved, the first request is accepted and processed. The rest are backlogged and placed in queue; the process does not begin for the second grievance until the first grievance is resolved. Hence, as to a backlogged grievance, the MDOC procedure does not begin until the grievance is no longer backlogged and is under active consideration by the ARP staff. The process for a grievance under the MDOC system begins after the grievance passes through screening, is accepted, *and is under active consideration by the ARP staff.* The first accepted grievance is reviewed immediately; the others are placed in queue, waiting to be accepted and processed.

**Boyd Did Not Wait 90 Days from Initiating His Grievance to File Suit**

Using the Prison Mailbox Rule, Boyd "filed" the instant suit on October 5, 2021 (the date he signed it and presented it to prison officials). The question becomes, "When did he initiate his grievance?" If the court used the initial date of Boyd's first grievance as the date the grievance process began (August 9, 2021), only 57 days elapsed between those dates (August 9, 2021 – October 5, 2021), far less than the 90-day period for the grievance process to run its course without a response from prison officials. Indeed, even if the court ignored the Prison Mailbox Rule and, instead, used the date the complaint was docketed (October 18, 2021), only 70 days elapsed between the submission of Boyd's grievance to prison officials and the filing of the instant suit. Thus, even under the plaintiff's flawed view of the grievance process, he did not wait the requisite 90 days for the grievance procedure to conclude without a response from prison officials. As such, he has not exhausted his administrative remedies through expiration of the 90-day maximum processing time.

In any event, as our sister court in the Southern District has held, grievances on backlog are not under active consideration and thus cannot form the basis for exhausting administrative remedies in a § 1983 case. *See Boyd v. Gaddis*, No. 3:20-CV-420-TSL-RPM, 2021 WL 4047392, at *3 (S.D. Miss. Aug. 13, 2021), *report and recommendation adopted*, No. 3:20CV420 TSL-RPM, 2021 WL 4037866 (S.D. Miss. Sept. 3, 2021), *appeal dismissed*, No. 21-60732, 2021 WL 7543194 (5th Cir. Nov. 19, 2021) (another case involving the plaintiff, the Southern District of Mississippi held that backlogged grievances may not form the basis for exhaustion of administrative remedies). As such, the 90-day period did not run between the submission of the August 9, 2021, grievance and the filing of the instant case, and Boyd has not exhausted his administrative remedies as to this claim. This argument is without merit, and the instant case must be dismissed without prejudice for failure to exhaust administrative remedies.

### Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.[8] In addition, the plaintiff's motions [27], [37], [39] for a jury trial, motion [30] for default judgment, motion [33] to correct defendant's name will be dismissed as moot. Finally, attorney Eakins' motion [40] to withdraw as counsel will be granted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 3 day of April, 2023.

---

[8] Though defendant Nurse Money could not be identified or served with process, the plaintiff's case against her will also be dismissed because he has not exhausted administrative remedies as to her, either. Where a defending party shows that a plaintiff has no cause of action, the defense also benefits an unserved or defaulting defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE